

NUMBER 13-17-00085-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ROGELIO ROY SUAREZ,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                 **Appellee.**

### On appeal from the 357th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Contreras, and Hinojosa**
**Memorandum Opinion by Justice Contreras**

A jury convicted appellant, Rogelio Roy Suarez, of one count of aggravated assault with a deadly weapon involving family violence, a second-degree felony, and one count of injury to a child, a third-degree felony, with the punishment for both charges enhanced due to a prior felony conviction. *See* TEX. PENAL CODE ANN. §§ 12.42(a), (b), 22.02(a)(2), 22.04(a)(3), (f) (West, Westlaw through 2017 1st C.S.). By a single issue, appellant

argues that he was provided with inadequate notice of the State's intent to enhance his punishment. We affirm.

## I. BACKGROUND

Appellant was indicted on October 5, 2016 on three counts: (1) aggravated assault with a deadly weapon involving family violence; (2) injury to a child; and (3) assault-family violence. *See id.* §§ 22.01(a)(1), (b-1), 22.02(a)(2), (b)(1), 22.04(a)(3), (f) (West, Westlaw through 2017 1st C.S.). In the indictment, only the assault-family violence charge included an enhancement allegation for a prior felony conviction for continuous family violence. *See id.* §§ 12.42, 25.11 (West, Westlaw through 2017 1st C.S.). The enhancement allegation provided the offense, the date, the convicting court, and the cause number for the continuous family violence conviction that the State sought to use to enhance appellant's punishment.

At trial, the evidence showed that on July 13, 2016, appellant was traveling in a car with his girlfriend Daisy Cruz and her daughter C.C.[1] During the car ride, an argument erupted between appellant and Daisy, and appellant attacked Daisy and attempted to stab her with a screwdriver. In doing so, appellant elbowed C.C. in the mouth as she was defending her mother. Despite filing previous reports and initially cooperating with police, while on the stand, Daisy denied having any recollection of the events surrounding appellant's charges.

After the close of the State's case-in-chief, appellant moved for a directed verdict on the charge for assault-family violence, and the court granted it.[2] Appellant then took

---

[1] Appellant and Daisy have since married. We refer to the minor victim by her initials to protect her privacy.

[2] The assault-family violence charge arose from an incident separate from the one which resulted in the other two charges. However, Daisy was the alleged victim for both the assault-family violence charge

2

the stand and denied the allegations against him, but admitted to being previously convicted for the continuous family violence charge referenced in the indictment. On January 19, 2017, the case went to the jury for a determination of guilt on the remaining two counts, and the jury returned a guilty verdict for both.

Before the punishment phase began, the State filed a notice of intent to enhance the punishment for the two charges of which appellant was convicted: (1) aggravated assault with a deadly weapon family violence, and (2) injury to a child. The conviction that the State sought to use for enhancement was the same conviction that had been alleged under the assault-family violence charge in the indictment. Appellant objected to the enhancement because the form was improper, the notice was improper, and "filing . . . for an enhancement [at that time] would not be proper."

On January 20, 2017, the court heard arguments from counsel on the State's notice to enhance, and appellant filed a motion to strike the enhancement in which he argued that: (1) notice of the enhancement was improper and an infringement of his due process rights; (2) as a result he was prevented from questioning jurors during voir dire in violation of the Fifth and Sixth Amendments to the United States Constitution and under article one, sections ten and nineteen of the Texas Constitution; and (3) enhancement of the punishment for both charges posed a "constitutional problem [because] it increase[d] the maximum possible punishment that is established in the statute for each offense."[3]

_____

and the aggravated assault with a deadly weapon charge. Daisy testified that she could not remember any of the events in regard to the assault-family violence charge, and the State was unable to provide any other evidence in support thereof. C.C. and law enforcement personnel testified as to the other two charges.

[3] As a result of the enhancement, the punishment range for the charge for assault with a deadly weapon increased from two-to-twenty years to five-to-ninety-nine years. *See* TEX. PENAL CODE ANN. §§ 12.33, 12.42(b), 22.02 (West, Westlaw through 2017 1st C.S.). The punishment range for the injury to a child charge was increased from two-to-ten years to two-to-twenty years. *See id.* §§ 12.34, 12.42(a), (b), 22.04 (West, Westlaw through 2017 1st C.S.).

3

The court overruled appellant's objections, and appellant moved for a continuance, which the court denied.

The punishment phase began that same day, and appellant pleaded "true" as to the enhancement allegation for the previous conviction for continuous family violence. The jury found the enhancement allegation true and assessed punishment at thirteen years' imprisonment for each count. The court then sentenced appellant with the sentences to run concurrently. This appeal followed.

## II.  APPLICABLE LAW

When the State seeks to enhance a defendant's punishment with evidence of a prior conviction, the defendant's right to notice of the prior conviction is grounded in due process. *Villescas v. State*, 189 S.W.3d 290, 293 (Tex. Crim. App. 2006). "The accused is entitled to a description of the judgment of former conviction that will enable him to find the record and make a preparation for a trial of the question of whether he is the named convict therein." *Id.* (quoting *Hollins v. State*, 571 S.W.2d 873, 875 (Tex. Crim. App. 1978)). Proper notice of intent to enhance punishment must be given in a timely manner, but it need not be pleaded in the indictment itself to be considered proper notice, so long as it is pleaded "in some form." *Ketchum v. State*, 199 S.W.3d 581, 592 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citing *Brooks v. State*, 957 S.W.2d 30, 33 (Tex. Crim. App. 1997)).

"[F]or purposes of conducting a due-process analysis, the determination of whether proper notice of enhancements was given does not require that notice be given within a particular period of time before trial or before the guilt phase is completed." *Pelache v. State*, 324 S.W.3d 568, 577 (Tex. Crim. App. 2010). "[A] defendant's federal

4

constitutional due-process rights are not violated by post-guilt, pre-punishment-phase notice of the State's intent to enhance his punishment with a prior conviction." *Ex parte Parrott*, 396 S.W.3d 531, 537 (Tex. Crim. App. 2013) (citing *Pelache*, 324 S.W.3d at 577). "Even when a defendant receives notice after he has been convicted, his due-process rights are not violated as long as notice is sufficient to enable him 'to prepare a defense to them,' and he is afforded an opportunity to be heard." *Id.* (quoting *Pelache*, 324 S.W.3d at 577). Rather, "[i]n determining whether appellant received sufficient notice of the State's intent to enhance punishment, we look to the record to identify whether appellant's defense was impaired by the timing of the State's notice." *Pelache*, 324 S.W.3d at 577.

When the accused has no defense to the enhancement allegation and has not suggested the need for a continuance to prepare one, notice given at the beginning of the punishment phase satisfies due process. *Villescas*, 189 S.W.3d at 294; *see Ex parte Parrott*, 396 S.W.3d at 537.

## III. DISCUSSION

By one issue, appellant argues that he was provided with inadequate notice of the State's intent to enhance his punishment.

Appellant first argues that the State's notice of enhancement filed after the guilt-and-innocence phase of trial violated his due process rights. Here, the indictment included an enhancement allegation identifying the previous conviction that was later used to enhance the two charges that resulted in convictions. The indictment also provided appellant with the specific offense, the date of the offense, the county and court where the judicial proceedings took place, and the cause number for the proceedings. Thus, we conclude that appellant had notice from the date of the indictment of the State's

intent to enhance punishment by using his prior felony conviction for continuous family violence. *See Villescas*, 189 S.W.3d at 293. And, the indictment was filed 104 days before trial began. Therefore, appellant had sufficient notice "to make a preparation for a trial of the question of whether he [was] the named convict" for that offense, and his argument that notice was given after the guilt-and-innocence phase of trial is without merit. *Id.*; *see Oyler v. Boles*, 368 U.S. 448, 504 (1962).

The record also reflects that appellant's defense was not impaired in any way—appellant neither denied nor contested the allegation that he had been convicted of that previous felony; rather, appellant admitted during his testimony at trial that it was he who had been convicted of the alleged offense, and he pled "true" to the allegation during the punishment phase. *See Pelache*, 324 S.W.3d at 577. Thus, the enhancement of appellant's punishment with his prior conviction for continuous family violence did not violate his due-process rights. *See Ex parte Parrott*, 396 S.W.3d at 537; *Pelache*, 324 S.W.3d at 577; *Villescas*, 189 S.W.3d at 294.

Appellant also appears to argue within this sub-issue that the enhancement of his punishment according to the statute was unconstitutional. However, the statute has been upheld as constitutional. *See, e.g.*, *McCardell v. State*, 557 S.W.2d 289, 291 (Tex. Crim. App. 1977); *Schultz v. State*, 510 S.W.2d 940, 944 (Tex. Crim. App. 1974). Accordingly, we reject this argument.

Finally, appellant argues that, as a result of the State's late notice of its intent to enhance, he was prevented from questioning jurors during voir dire about any existing bias over the maximum possible sentence. However, having previously concluded that

6

appellant received timely and sufficient notice of the State's intent to enhance, this argument necessarily fails.

We overrule appellant's sole issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
15th day of March, 2018.

7