Affirmed and Memorandum Opinion filed July 24, 2003









Affirmed and Memorandum Opinion filed July 24, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00422-CR

____________

 

MICHAEL
PERRY CROFTON, Appellant

 

V.

 

THE
STATE OF TEXAS, Appellee

 



 

On Appeal from the
248th District Court

Harris County, Texas

Trial Court Cause
No. 878,092

 



 

M E M O R A N D U M    O P I N I O N

After a bench trial,
appellant was convicted of the felony offense of unlawful possession of a
firearm by a felon.  See Tex. Pen. Code Ann. ' 46.04 (Vernon Supp.
2002).  Alleging six points of error, he
asserts insufficient evidence, abuse of discretion, and ineffective assistance
of counsel.  We affirm.

PROCEDURAL AND FACTUAL
HISTORY

On February 8, 2001,
Officer Raoul Yzquierdo, Jr. of the Houston Police Department was on patrol
when he “ran a [license] plate” on a vehicle that came back with an expired
registration.  The officer noticed there
were three people in the vehicle: two in the front seat and one in the back.  When Yzquierdo turned on his emergency lights
to pull the vehicle over, he observed the backseat passengerCappellant Michael Perry
CroftonCreaching down toward the
floorboard.

Approaching the vehicle,
Yzquierdo asked the driver, Kimble Guilbeaux,[1] for his
driver=s license and ran a check
on the license.  Upon discovering
Guilbeaux had outstanding warrants, Yzquierdo took the driver into custody.

Once the officer placed
Guilbeaux in custody, he returned to the vehicle and asked the front-seat
passenger, Kevin Richardson, for his identification.  Upon receipt of Richardson=s driver=s license, Yzquierdo ran
a second check and discovered Richardson, too, had open warrants.  Yzquierdo then took Richardson into custody.

Returning to the vehicle
a third time, Yzquierdo asked appellant for his identification. Appellant
answered that his name was “Michael Washington” and gave a date of birth that
failed to match his alleged age. 
Suspicious, the officer ran a check on the information he was given and
got a warrant response for appellant.[2]  Yzquierdo then called another police unit for
backup.








When Officer J.R. Roberts
arrived at the scene, Yzquierdo and Roberts questioned appellant about his
identity and took him into custody for having given false information.  See Tex.
Pen. Code Ann. '
38.02(b) (Vernon 1994).  Additionally,
the officers searched Guilbeaux=s
vehicle and recovered a .380 semiautomatic pistol from underneath the rear
portion of the front passenger seat. 
They also found ammunition in appellant=s
pocket that would fit the firearm.

Because appellant had
previously been convicted of burglary of a motor vehicle and was still on
parole, appellant was charged by indictment in cause number 878,092 with the
felony offense of possession of a firearm by a felon.  See Tex.
Pen. Code Ann. '
46.04(a) (Vernon Supp. 2003).  Following
a bench trial to the court in March, 2002, appellant was found guilty and
entered pleas of true to the enhancement allegations contained in the
indictment.  The trial court subsequently
found the enhancement allegations to be true and assessed appellant=s punishment at
twenty-eight years=
confinement in the Institutional Division of the Texas Department of Criminal
Justice.  

Appellant filed a pro
se motion for new trial on April 5, 2002, followed by a timely notice of
appeal.

ISSUES ON APPEAL

Appellant asserts the
evidence is legally insufficient (1) to support his conviction for the offense
of possession of a weapon by a felon; (2) to prove he previously committed the
offense of burglary of a motor vehicle in cause number 429,336; and (3) to
prove he is the same person who was released on parole on April 1, 1999 in
cause numbers 429,336 and 629, 121. 
Appellant further asserts (4) the evidence is factually insufficient to
support his conviction for possession of a weapon by a felon; (5) the trial
court erred in denying his motion for new trial based on ineffective assistance
of counsel; and (6) his defense counsel rendered ineffective assistance of
counsel by failing to file a motion to suppress evidence. 

I.   LEGAL SUFFICIENCY








In his first, fifth, and
sixth points of error, appellant argues the evidence presented at trial was
legally insufficient to support his conviction for unlawful possession of a
firearm by a felon.  First, he asserts
the evidence was insufficient to prove he “possessed” the firearm found in
Guilbeaux=s
car; next, he asserts the evidence was insufficient to prove that he was a “felon”
as alleged in his indictment; and finally, he asserts the evidence was legally
insufficient to prove he was the same person who allegedly was released on
parole April 1, 1999.

A.        Standard of Review

To determine legal
sufficiency, we view the evidence in the light most favorable to the verdict
and determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307,
319 99 S. Ct. 2781, 2789 (1979); Garrett v. State, 851 S.W.2d 853, 857 (Tex. Crim. App.
1983).  This standard of review applies
to cases involving both direct and circumstantial evidence.  King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App.
1995).  

The trial court, as fact
finder, is the exclusive judge of the facts, the credibility of the witnesses,
and the weight to be given to the witnesses=
testimony.  Penagraph v. State,
623 S.W.2d 341, 343 (Tex.
Crim. App. 1981).  The fact finder
may accept one version of the facts and reject another version, or may reject
any part of a witness=
testimony.  Id.  The fact finder may also reasonably infer
facts from the evidence presented, credit the witnesses it chooses to,
disbelieve any or all of the evidence or testimony proffered, and weigh the
evidence or testimony as it see fit.  Broden
v. State, 923 S.W.2d 183, 189B90
(Tex. App.CAmarillo
1996, no pet.). 

B.        Discussion 

In his first, fifth, and
sixth points of error, appellant argues the evidence presented at trial was
legally insufficient to support his conviction for possession of a firearm by a
felon.  We disagree.

1.         There was legally sufficient evidence to find appellant “possessed”
the firearm found in Guilbeaux=s
car.

 








A person commits unlawful
possession of a firearm if he has been convicted of a felony and possesses a
firearm after conviction and before the fifth anniversary of the person=s release from
confinement following conviction of the felony or the person=s release from
supervision under community supervision, parole, or mandatory supervision,
whichever date is later.  Tex. Pen. Code Ann. ' 46.04(a)(1) (Vernon
Supp. 2003).  

To prove the “possession”
element of the offense, sufficiency of the evidence is analyzed under the rules
adopted for determining sufficiency of the evidence in cases of possession of a
controlled substance.  Corpus v. State,
30 S.W.3d 35, 37 (Tex.
App.CHouston [14th Dist.]
2000, pet. ref=d).  Therefore, the State is required to prove (1)
that the accused exercised actual care, custody, control or management over the
firearm; (2) that he was conscious of his connection with it; and (3) that he
possessed the firearm knowingly or intentionally.  Nguyen v. State, 54 S.W.3d 49, 52 (Tex. App.CTexarkana
2001, pet. ref=d),
citing Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App.
1995).  

Whether direct or
circumstantial evidence is used, the State must establish the accused=s connection with the
firearm was more than just fortuitous.  Brown,
911 S.W. 2d at 747.  When the firearm is
not found on the accused=s
person or is not in the accused=s
exclusive possession, as here, additional facts must affirmatively Alink@ the accused to the
contraband.  Id.; Corpus, 30
S.W.3d at 38; McMillon v. State, 940 S.W.2d 767, 768B69 (Tex. App.CHouston [14th Dist.]
1995, pet. ref=d).  This “affirmative link” need not be so strong
that it excludes every other reasonable hypothesis except the defendant=s guilt.  Brown, 911 S.W.2d at 748.








Factors that may
establish an “affirmative link” between the accused and contraband include
whether (1) the contraband was in a car driven by the accused; (2) the
contraband was in a place owned by the accused; (3) the contraband was
conveniently accessible to the accused; (4) the contraband was in plain view;
(5) the contraband was found in an enclosed space; (6) the contraband was found
on the same side of the car as the accused; (7) the conduct of the accused
indicated a consciousness of guilt; (8) the accused had a special relationship
to the contraband; (9) occupants of the automobile gave conflicting statements
about relevant matters; and (10) affirmative statements connect the accused to
the contraband.  Corpus, 30 S.W.3d
at 38.  The number of factors present is
not as important as the logical force the factors have in establishing the
elements of the offense.  Id.

Here, the State proffered
the following to establish an “affirmative link” between appellant and the
firearm found in Guilbeaux=s
car: (1) testimony that, as soon as Yzquierdo activated his emergency lights,
he saw appellant make a movement toward the floorboard where the pistol was
recovered; (2) testimony that appellant gave Yzquierdo false information when
asked to identify himself; (3) testimony that appellant seemed nervous,
talkative, and jittery; (4) testimony that a .380 semi-automatic pistol was
recovered from the area in which appellant made his gesture; (5) testimony that
the pistol found in Guilbeaux=s
car was lying on its left side with the barrel pointing toward the front of the
vehicle, as if a backseat passenger had placed it there; (6) testimony that
Roberts found the firearm in the spot immediately in front of where appellant=s feet had been; (7)
testimony that neither Guilbeaux nor Richardson could have reached the pistol
where it was found; and (8) testimony that ammunition was found in appellant=s pocket that fit the
pistol in question. 

Because the “logical
force” of these facts, in combination, affirmatively links appellant to the
firearm, we conclude that, when viewed in the light most favorable to the
verdict, a rational trier of fact could have reasonably found appellant had
knowledge of, and control over, the firearm. 
See Nguyen, 54 S.W.2d at 55 (evidence was legally sufficient to
support an “affirmative link” where (1) officer saw defendant lean between his
automobile=s
seats after the officer activated his flashers; where defendant pretended to be
asleep when he was not in fact sleeping; where the  officer found the firearm in an unexposed
spot behind the driver=s
seat; and where the officer said the position of the gun was consistent with a
passenger having placed it there.).

Accordingly, appellant=s first point of error is
overruled.

2.         There was legally sufficient evidence to find appellant was
previously convicted of the offense of burglary of a motor vehicle.

 

In his fifth point of
error, appellant asserts the evidence was legally insufficient to prove that he
was previously convicted of the offense of burglary of a motor vehicle on
December 5, 1986, as alleged in the indictment.[3]  Because his judgment and sentence reflect a
date of conviction of January 7, 1986, and because December 5, 1986 is  the date upon which the mandate of affirmance
for his conviction for burglary was received from the clerk of the Court of
Criminal Appeals, he argues, his indictment was incorrect and he cannot be
convicted as charged.  We disagree.

First, the specific date
of appellant=s
prior felony conviction is not an element of the offense of unlawful possession
of a firearm by a felon.  See Tex. Pen. Code Ann ' 46.04(a) (Vernon Supp.
2003).[4]  Rather, it is defendant=s status as a felon that
is important, not the date upon which the prior felony conviction occurs.  State v. Mason, 980 S.W.2d 635, 640 (Tex. Crim. App.
1998).

Second, a conviction from
which an appeal is taken is not considered final until the conviction is
affirmed and the court=s
mandate of affirmance becomes final.  Russell
v. State, 790 S.W.2d 655, 657 (Tex. Crim. App. 1990).  Thus, appellant=s
indictment was correct because his original judgment and sentence show he was
found guilty on January 7, 1986 and sentenced on January 8, 1986, and that the
mandate of affirmance for his conviction was issued December 2, 1986 and
received from the Clerk of the Court of Criminal Appeals on December 5, 1986.








Because it was appellant=s status as a felon that
was material to his conviction for possession of a firearm as a felon and not
the date upon which he was convicted, and because  appellant=s
burglary conviction did not in fact become final until December 5, 1986, we
find the evidence was legally sufficient to prove appellant was convicted of
the offense of burglary of a motor vehicle as alleged in his indictment.  

Accordingly, we overrule
appellant=s
fifth point of error.

3.         There was legally sufficient evidence to find appellant was
the same person released on parole April 1, 1999.

 

In his sixth point of
error, appellant asserts the evidence presented at trial was legally
insufficient to prove he was the same person alleged by the State to have been
released on parole on April 1, 1999.[5]  The evidence was therefore insufficient to
prove appellant committed the offense of possession of a firearm by a felon, he
claims.  Appellant=s argument is without
merit.

First, the indictment did
not allegeCand
the State did not seek to proveCthat
the appellant was released from parole on April 1, 1999; rather, the
indictment alleged appellant was released from confinement on April 1,
1999.








To prove a defendant=s identity as the person
named in a certificate of parole, the State may utilize several nonexclusive
means.  See Littles v. State, 726
S.W.2d 26, 31 (Tex.
Crim. App. 1984) (opin. on reh=g)
(discussing various methods of proof). 
Each case must be judged on its individual merits.  Id. 
Methods include witness testimony; the introduction of certified copies
of a defendant=s
judgment and sentence; the introduction of a record of the Texas Department of
Criminal Justice or county jail that includes fingerprints of the defendant,
supported by expert testimony identifying them as identical with known prints
of the defendant; stipulation or judicial admission by the defendant; and
photographs.  Id. at 31B32. 

Here, appellant=s identity was
established by (1) the testimony of a parole officer who identified appellant
in open court as the same person whose photo and fact sheet matched the ones
contained with the certificate of parole for Michael Perry Crofton; (2) the
testimony of a fingerprint expert who testified appellant was the same person
identified in the “pen packet” admitted into evidence,[6] which
contained the same information as the certificate of parole; and (3) appellant=s own admission on
cross-examination that, at the time of the offense, he was out on parole for
the offenses alleged in the indictment.

After reviewing the
evidence in the light most favorable to the verdict, we conclude a rational
trier of fact could have reasonably found appellant to be the same person who
was released from confinement for the offense of burglary of a motor vehicle on
April 1, 1999.  Therefore, the evidence
was legally sufficient to prove appellant committed the offense of possession
of a firearm by a felon as charged in the indictment.  

Accordingly, we overrule
appellant=s
sixth point of error. 

II.   FACTUAL SUFFICIENCY

In his second point of
error, appellant asserts the evidence presented at trial was factually
insufficient to support his conviction for the offense of possession of a
firearm by a felon.

A.        Standard of Review








To determine factual
sufficiency, we view the evidence in a neutral light and set aside the verdict
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong or unjust.  Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
We must review the evidence weighed by the jury tending to prove the
existence of the elemental fact in dispute, and compare it to the evidence
tending to disprove that fact.  Id.  

The appellate court may
find either that the State=s
proof of guilt was so obviously weak as to undermine confidence in the jury=s determination, or that
the finding of guilt was against the great weight and preponderance of the
evidence.  Id. at 11.  When the defendant proffers contrary
evidence, we consider whether the proof of guilt, although adequate if taken
alone, is greatly outweighed by defendant=s
proffered evidence.  Id.  We may disagree with the fact finder=s decision, even if
probative evidence exists that supports the verdict.  Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App.
1996).  However, a factual sufficiency
review must be appropriately deferential to avoid substituting our judgment for
the fact finder=s.
 Id. at 648.  We are not free to reweigh the evidence, but
must exercise our jurisdiction only to prevent a manifestly unjust result.  Id.

B.        Discussion

Appellant argues that the
State=s evidence that he was in
“possession” of the firearm seized from the vehicle was factually insufficient
to support his conviction.  We disagree.

As stated earlier, the
State submitted the following facts to support its claim that appellant was in
possession of the firearm found in Guilbeaux=s
car: (1) appellant made a movement toward the floorboard where the pistol was
recovered immediately after Yzquierdo activated his flashers; (2) appellant
gave false information when Yzquierdo asked appellant to identify himself; (3)
appellant seemed “nervous,” “talkative,” “suspicious,” “jittery,” and “like he
wanted to run” when Yzquierdo asked him questions; (4) a .380 semi-automatic
pistol was recovered from the exact spot below which appellant was seated; (5)
neither Guilbeaux, nor Richardson, could have reached the pistol from its
location under Richardson=s
seat; (6) the pistol was positioned in such a way as to indicate a backseat
passenger had placed it there; and (7) appellant was carrying bullets in his
pocket that were of the same caliber as the firearm.








Although the bullets
found in appellant=s
pocket were from a different manufacturer than the ones found in the pistol,
and appellant testified he had never seen the pistol before, appellant never
offered an explanation as to why he was carrying the bullets or why he was in possession
of an altered birth certificate. 
Moreover, appellant=s
claim that he was asleep in the backseat of Guilbeaux=s car when the vehicle
was pulled over is called into doubt by evidence in the record suggesting the
three men were in the car “only . . . a short time to go eat gumbo.”

As the trier of fact, the
trial judge was not required to believe appellant=s
explanation of events.  Kirkwood v.
State, 488 S.W.2d 824, 826 (Tex. Crim. App. 1973). 
Indeed, the trial court had the opportunity to evaluate the training and
experience of Yzquierdo and Roberts, listen to their testimony, and judge their
credibility.  The trial court also had
the opportunity to observe appellant=s
demeanor, evaluate his testimony, and determine the weight to give that
testimony.  The judge=s decision to resolve the
conflicting views of the evidence in favor of the State does not make the trial
court=s decision manifestly
unjust.  Cain v. State, 958 S.W.2d
404, 410 (Tex. Crim.
App. 1997).

Because appellant=s evidence, viewed in a
neutral light, is not so contrary to the overwhelming weight of the evidence as
to render the verdict clearly wrong and manifestly unjust or against the great
weight and preponderance of the evidence, we conclude the evidence was
factually sufficient to support appellant=s
conviction for possession of a firearm by a felon.  See Johnson v. State, 23 S.W.3d at
11.  Accordingly, we overrule appellant=s second point of error.

III.   MOTION FOR NEW TRIAL

In his third point of
error, appellant asserts the trial court erred in denying his motion for new
trial.  Because defense counsel failed to
interview or subpoena a witness to his 








alleged offense, appellant claims he
received “ineffective assistance of counsel” and was entitled to a new
trial.  We disagree.

A.        Standard of Review

A trial court=s ruling denying a
defendant=s
motion for new trial is reviewed under an abuse of discretion standard.  Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim. App.
2001).  The reviewing court does not
substitute its judgment for that of the trial court, but rather decides whether
the trial court=s
decision is so arbitrary or unreasonable as to warrant reversal.  Id. at 148.  The ruling of the trial court is presumed to
be correct, and the burden rests on the appellant to establish the contrary.  Jensen v. State, 66 S.W.3d 528, 545 (Tex. App.CHouston [14th Dist.]
2002, pet ref=d).

B.        Pertinent facts

In his amended motion for
new trial, appellant alleged that trial counsel rendered ineffective assistance
of counsel for failing to interview and subpoena Richardson, the second
passenger in the car the night appellant was arrested.  On June 5, 2002, the trial court held a
hearing to consider appellant=s
motion for new trial.

At the hearing, an
affidavit signed by Richardson was admitted into evidence stating that
Richardson would have been availableCand
willingCto testify on appellant=s behalf had he been
called.  Given the chance to testify,
Richardson claims, he would have stated he did not see appellant in possession
of a firearm the night appellant was arrested.[7]

 

Three attorneys testified
at appellant=s
hearing.  First, Joe VarelaCappellant=s first appointed
attorneyCtestified he had
interviewed and subpoenaed Richardson and was of the opinion that Richardson=s testimony would have
strengthened appellant=s
defense.[8]  Second, Connie WilliamsCappellant=s second appointed
attorneyCtestified he did not
interview Richardson, or call him to testify, because appellant expressed doubt
as to the value of the testimony and asked him not to.  Finally, Brian William Wice, an expert on
defense strategy and representation, testified Williams= decision not to
investigate or interview Richardson was “ineffective assistance of counsel”
because a trial attorney=s
“duty to investigate is independent of a client=s
stated desire.”  The trial court denied
appellant=s
motion for new trial.

C.        Discussion

When a defendant presents
evidence on his trial counsel=s
ineffectiveness at a hearing on a motion for new trial, the appellate court
reviews the trial court=s
application of the test pronounced in Strickland v. Washington, 466 U.S.
668, 104 S. Ct. 2052 (1984).  Appellant
must prove (1) that his counsel=s
representation was deficient; and (2) that the deficient performance was so
serious that it prejudiced his defense.  Id.,
466 U.S. at 686, 104 S. Ct. at 2064; see also Bone v. State, 77 S.W.3d
828, 833 (Tex. Crim.
App. 2002).  

Thus, appellant must
prove by a preponderance of the evidence that counsel=s representation fell
below the standard of prevailing professional norms, and that there is a
reasonable probability that, but for counsel=s
deficiency, the result of the proceeding would have been different.  Id. 
Indeed, appellant must identify the specific “acts or omissions of
counsel that are alleged” to constitute ineffective assistance and
affirmatively prove that  they fell below
the professional norm for reasonableness. 
McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App.
1996) (citing Strickland, 466 U.S. at 690, 104 S. Ct. at 2066). 








Here, appellant alleges
trial counsel rendered ineffective assistance of counsel when he failed to
interview Richardson and failed to subpoena Richardson to testify at trial.[9]
 Because Williams never properly “investigated”
the value of Richardson=s
testimony, he argues, Williams=
representation was deficient and appellant was entitled to a new trial. See
McFarland, 928 S.W.2d at 502 (counsel has a duty to make “reasonable
investigations or to make a reasonable decision that makes particular
investigations unnecessary”); Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App.
1990) (counsel has a responsibility to “seek out and interview potential
witnesses”); Butler v. State, 716 S.W.2d 48, 54 (Tex. Crim. App.
1986) (counsel has a duty to make an independent investigation of the facts of
his client=s
case).  We disagree.

First, evidence suggests
appellant did not want Richardson to testify.  Williams testified that appellant “didn=t know what [Richardson=s] testimony would be and
. . . was afraid to call him.”  When a
defendant has given counsel reason to believe that pursuing certain
investigations would be fruitless or harmful, “counsel=s failure to pursue those
investigations may not later be challenged as unreasonable.”  Strickland, 466 U.S. at 690, 104 S.
Ct. at 2066.[10]

 

Second, evidence suggests
appellant was not any easy client to please. 
Varela, appellant=s
first attorney, testified appellant was a “difficult client”; appellant
terminated Varela=s
representation on the very day his trial was to begin; appellant threw a table
across the courtroom during one of many “outbursts@; and five deputies had
to restrain appellant at one point during the proceedings.  Because “[t]he reasonableness of counsel=s actions may be . . .
substantially influenced by the defendant=s
own . . . actions,” such facts are pertinent to evaluating Williams= representation.  Id.

Third, evidence suggests
Varela, appellant=s
first attorney, may have been fired for planning to call Richardson.  When Varela testified appellant=s decision to represent
himself was made the day of trial, Varela did not offer an explanation as to
why appellant chose not to utilize an attorney; thus, one is left to wonder if
Varela=s plans to call
Richardson triggered appellant=s
firing of Varela.  If so, such a link
would support a conclusion that Williams necessarily had to seek an alternative
strategy to defend appellant in order to continue representing him.

Fourth, evidence suggests
it was sound strategy for Williams= not
to call Richardson.  Because Williams and
appellant discussed the possibility of Richardson testifying and discussed the
possibility of finding other witnesses who knew Guilbeaux and whether he owned
a gunCand because appellant
expressed fear that Richardson=s
testimony might be damagingCWilliams
could very well have concluded he was protecting his client from damaging
testimony that would have been admitted had he “opened the door.”  See Duren v. State, 87 S.W.3d 719, 733 (Tex. App.CTexarkana
2002, no pet.).  Indeed, Williams said as
much when he testified that, even without Richardson=s testimony, he felt “there
were not sufficient links in the case” to convict his client and “he had a
strong case” for appellant=s
defense.  








Finally, evidence
suggests Richardson may not have been truthful in his affidavit when he stated
he would have been willing to appear on appellant=s
behalf.  Indeed, both the State and
Varela subpoenaed Richardson to appear at appellant=s first trial court
setting; yet Varela cannot “remember nor do [his] notes reflect” that
Richardson was actually present at that settingCdespite
Varela=s having determined
Richardson to be his key witness. 
Additionally, the record shows the State repeatedly attempted to
subpoena Richardson to appear at appellant=s
trialCthe last time in
February, 2002 immediately before appellant=s
March trial dateCyet
nothing in the record indicates Richardson appeared in court.

After a careful review of
the record, we cannot say Williams=
representation was deficient.  Because
appellant has failed to prove the first prong of Strickland, the trial
court did not abuse its discretion in denying appellant=s motion for new trial on
the basis of ineffective assistance of counsel.[11]  

Accordingly, we overrule
appellant=s
third point of error.

IV.   INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth and final
point of error, appellant asserts his trial counsel rendered ineffective
assistance by failing to file a motion to suppress the ammunition found in
appellant=s
pocket.  Because the ammunition was
discovered as a result of an improper search and seizure, he argues, the
ammunition should not have been admitted into evidence.




A.        Standard of Review

Counsel is not
ineffective per se for failing to file a motion to suppress.  Rivera v. State, 981 S.W.2d 336, 339 (Tex. App.CHouston [14th Dist.]
1998, no pet.).  An assertion of
ineffective assistance of counsel will be sustained only if the record
affirmatively supports such a claim.  See
Ex parte Ewing, 570 S.W.2d 941, 943 (Tex. Crim. App. 1978).  Appellant must demonstrate that trial counsel=s performance was
unreasonable under the prevailing professional norms and that the challenged
action was not sound trial strategy.  Stafford
v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). 








B.        Discussion

Appellant contends that
trial counsel should have filed a motion to suppress on the ground that the
ammunition found on appellant was seized pursuant to an illegal search.  Without a record to explain trial counsel=s rationale, however,
appellant cannot substantiate his claim that 
trial counsel=s
representation was deficient.  See
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Neither can he substantiate the second prong
of Strickland that, “but for” trial counsel=s alleged deficient
performance, the outcome of his trial would have been different.  Id.

In appellant=s motion for new trial,
appellant alleged he was entitled to a new trial on two grounds.  First, as discussed above in Section III, he
asserted Williams rendered ineffective assistance of counsel when he failed to
interview and subpoena Richardson; next, he asserted Williams=s performance was
deficient because he failed to file a motion to suppress the ammunition.  

At appellant=s motion for new trial
hearing, howeverCwhen
defense counsel had the opportunity to question Williams as to why he had not
filed a motion to suppressC
appellant abandoned the allegation concerning the search issue.  Without a record to explain trial counsel=s rationale, there is a “strong
presumption that counsel was competent.” 
Perez v. State, 56 S.W.3d 727, 730B31
(Tex. App.CHouston [14th Dist.]
2001, pet ref=d);
see also Thompson, 9 S.W.3d at 813. 
Indeed, to defeat the presumption of reasonable professional assistance,
“[a]ny allegation of ineffectiveness must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.”  McFarland v. State, 928 S.W.2d 482,
500 (Tex. Crim. App.
1996).








Here, there is nothing in
the record to suggest Williams=
failure to file a motion to suppress fell below the professional norm for
reasonablenessCneither
Varela nor Wice testified that Williams should have filed such a motion.  Additionally, there is nothing to suggest
such a motion would have been granted. 
Without such evidence, appellant cannot prove the second prong of StricklandCnamely, that “but for”
Williams= deficient performance,
the outcome of the proceeding would have been different.[12]

Because there is nothing
in the record to suggest Williams=
performance was the “product of an unreasoned or unreasonable strategy, or that
there was a fair probability that it led to either an unreliable guilty verdict
or unjust punishment,” we find no ineffective assistance of counsel.  Accordingly, we overrule appellant=s fourth point of error.

Having
overruled all of appellant=s points of error,
we affirm the judgment of the trial court.

 

 

/s/        John S. Anderson

Justice

 

 




 

Judgment rendered and Memorandum Opinion filed July 24, 2003.

Panel consists of Justices Anderson, Seymore, and Guzman.

Do Not PublishCTex. R. App. P. 47.2(b).











[1]  Mr. Guilbeaux
is now deceased.





[2]  There was a
warrant out for appellant=s arrest for failure to report to the Parole Board.





[3]  Proof of
appellant’s prior conviction was not offered to support a punishment
enhancement; it was offered to prove a necessary element of the offense of
possession of a firearm.  See Tex. Pen. Code Ann. ' 46.04(a)(1) (Vernon Supp. 2003).  Under subsection 46.04(a), “[a] person who
has been convicted of a felony commits an offense if he possesses a
firearm: (1) after conviction and before the fifth anniversary of the person’s
release from confinement following conviction of the felony or the person=s release from
supervision under community supervision, parole, or mandatory supervision,
whichever is later; or (2) after the period described by Subdivision (1), at
any location other than the premises at which the person lives.”  Id. at '' 46.04(a)(1)
and (2) (emphasis added).





[4]  See note
3.





[5]  Although
appellant=s brief states the evidence was legally insufficient
to prove appellant was released from parole on April 1, 1999, we believe
appellant=s use of the word “from” rather than “on” to have been
an inadvertent error. 





[6]  A pen packet
is a set of documents from a penal institution that includes copies of a
defendant’s judgment of guilt, photo, and fingerprints.





[7]  According to
appellant=s brief and testimony offered by appellant=s first attorney at his suppression hearing,
Richardson was also prepared to testify that he had known appellant for about a
year and that he had never seen appellant with a gun during that time.





[8]  Varela
testified his trial strategy would have been to dispute the State’s alleged “affirmative
link” between appellant and the firearm by (1) proving the bullets found on
appellant were from a different manufacturer than the bullets found in the gun;
and (2) proffering Richardson’s testimony that Richardson had never seen
appellant with the gun.  At trial,
appellant=s trial counsel did in fact elicit testimony that the
bullets found in the firearm were at variance with the bullets found on
appellant; however, trial counsel did not call Richardson to testify.





[9]  In his motion
for new trial, appellant also alleged trial counsel was ineffective for failing
to file a motion to suppress the ammunition found in appellant’s pocket.  This assertion was abandoned during appellant=s hearing.





[10]  See e.g. Jackson
v. State,
76 S.W.3d 798, 802 (Tex. App.CCorpus Christi 2002, no pet.) (In a criminal case, an
attorney has the specific responsibility under the Texas Disciplinary Rules of
Professional Conduct to abide by his client’s decision, after consultation with
the client, to waive jury trial; “appellant cannot complain of having received
something she desired and requested through counsel”); Posey v. State,
763 S.W.2d 872, 877 (Tex. App.CHouston [14th Dist.] 1988, pet ref’d) (“Trial counsel
simply complied with his client=s wishes and
cannot be held accountable for appellant’s decisions.”); Shepherd v. State,
673 S.W.2d 263, 267 (Tex. App.CHouston [1st Dist.] 1984, no pet.) (“We cannot presume the
nature of an attorney’s advice . . . without evidence to show that the trial
strategy originated with the attorney and was not the result of acquiescence to
the client’s wishes.”).

 





[11]  Moreover, even
if appellant could show Williams’ representation was deficient, he has failed
to produce evidence supporting the second prong of StricklandCnamely that, “but for” Williams’ failure to interview
Richardson, the result of appellant’s trial would have been different.  Bone, 77 S.W.3d at 833.  Because Richardson’s affidavit states only
that Richardson did not see appellant in possession of a firearm Cand not that appellant did not have a firearmCit is doubtful Richardson’s testimony would have
rendered an acquittal.





[12]  Even if Williams
had filed the motion to suppress, it is reasonable to assume the trial court
would have determined the ammunition to have been lawfully seized.  At the time the officers discovered the
ammunition, appellant was in custody.  A
search incident to arrest is lawful.  Chimel
v. California, 395 U.S. 752, 762B63 (1969); Williams
v. State, 726 S.W.2d 99, 101 (Tex.
Crim. App.
1986).  Indeed, an arresting officer may
search an arrestee=s person to discover and remove weapons
and to seize evidence to prevent its concealment or destruction, and may search
the area “within the immediate control” of the person arrested, meaning the
area from which he might gain possession of a weapon or destructible
evidence.  Chimel, 395 U.S. at 762B63.  It is of no
consequence that appellant was arrested for a different offense than the one
for which he was eventually charged.  Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999).